HEARD APRIL TERM, 1874.

## MAGWOOD *vs.* RAILROAD BANK.

A bank is liable to a *cestui que trust* of its stock, standing on its books in the name of a trustee "in trust for" such *cestui que trust*, if it transfers the stock to a purchaser from the trustee without the knowledge or consent of the *cestui que trust*—the trust being without power of sale, and the *cestui que trust* being an unmarried female of full age.

BEFORE GRAHAM, J., AT CHARLESTON, SEPTEMBER TERM, 1873.

This was an action by Elizabeth C. Magwood against the South Carolina Railroad Company and the South-western Railroad Bank and H. M. Magwood, for an account of the proceeds of certain stock of the plaintiff, alleged to have been sold without authority. The summons and complaint were afterwards amended, by order of the Court, made on the motion of defendants' counsel, by making the South Carolina Loan and Trust Company, Branch Sons & Co. and A. J. White & Son, the alleged purchasers of the stock, parties defendant.

The facts were as follows:

On and for some time previous to the 24th November, 1866, H. M. Magwood held 232 whole shares of the capital stock of the South Carolina Railroad Company and the South-western Railroad Bank, and 232 shares of the South Carolina Railroad Company, "in trust for the sole and separate use of" Elizabeth C. Magwood, "and not to be subject to the control, the contracts, the debts, or the agreements of any husband of" hers—she being then of full age and unmarried. The certificates for the stock stood on the books of the bank in the name of "H. M. Magwood, in trust for Elizabeth C. Magwood," and a trust, in the same terms, appeared on the face of each certificate, which also stated that "this stock is not transferable, except at the South-western Railroad Bank in Charleston, by the stockholder in person, or by attorney." On the day named H. M. Magwood sold to John E. Phillips 137 of the whole and the same number of the half shares, and the transfer was entered on the books of the bank and new certificates issued to Phillips. This sale, it was admitted, was made with the oral consent of the plaintiff, and no claim upon the railroad company and bank was made by this action because of that transaction.

After the sale above mentioned there remained, in the hands of H. M. Magwood, 95 whole shares of the railroad company and bank,

and as many half shares of the railroad company, and these were all sold by him without the knowledge or consent of the plaintiff, at the times, to the parties, and in manner following: On the 4th June, 1869, he sold 60 whole shares to the South Carolina Loan and Trust Company, on the 12th November, of the same year, he sold 35 whole shares to Branch Sons & Co., and on the 3d October, 1870, he sold the 95 half shares to A. J. White & Son. The transfers were made at the bank, through attorneys—the power in each case being written at the foot of the certificate, and signed " H. M. Magwood, in trust for E. C. Magwood." At each transfer the original certificate was surrendered to the bank and cancelled, the transfer entered on the books of the bank, and a new certificate issued to the purchasers.

It further appeared that of the proceeds of the sale of 35 whole shares on the 12th November, 1869, $1,203.75 were on the same day applied by the trustee to the payment of a bond of the plaintiff's, given for the purchase of a house and lot, but there was no evidence that the plaintiff knew of the application or directed it.

His Honor held that the South Carolina Railroad Company and the South-western Railroad Bank were liable to the plaintiff, as for a breach of trust, for the proceeds of the sales of the 95 whole shares and 95 half shares of stock, with interest, less the sum paid by the trustee on the plaintiff's bond, given for the purchase of a house and lot; and after reference to ascertain the amount, a judgment was entered for the plaintiff against the defendants last named, for $5,865.49. He further held that the South Carolina Loan & Trust Company, Branch Sons & Co. and A. J. White & Son were not liable, and dismissed the amended complaint by which they were made parties defendant.

The South Carolina Railroad Company and the South-western Railroad Bank appealed, on the grounds:

1. That the Court erred in holding that the *cestui que trust* is the actual stockholder.

2. That even if the corporation is the trustee for its stockholders, the Court erred in eliminating H. M. Magwood, and making the corporation the trustee of the plaintiff.

3. That on the facts established by the evidence the corporation could not refuse to transfer the stock, and the Court should have so held.

4. That the negligence of the plaintiff contributed directly to the

breach of trust by Magwood, and estops plaintiff from remedy against any one but H. M. Magwood.

5. That the Court permits the plaintiff to set aside the sale as illegal, and yet retain part of the proceeds of sale, whereas the Court should have held that the acceptance by the plaintiff of part of the proceeds of sale was an acquiescence in the sale.

6. That the rule requiring transfer on the books of the corporation is for the protection of the corporation only, and does not affect the legal or equitable rights of vendor and vendee; and when the legal owner of stock requests the transfer of the same, the corporation cannot, in the absence of circumstances exciting suspicion of bad faith, look behind the legal title or adjudicate the equities between the parties, and the Court should have so held.

7. That the property in stock is in the stockholder, not in the corporation, and the latter cannot, by its act, vest or divest the ownership. When it permits a transfer on its books from vendor to vendee, it simply recognizes and records the transaction, without affecting the rights of parties or their liabilities to third persons, and the Court should have so ruled.

8. That while it is the duty of the bank to know the legal title, and ascertain the genuineness of the signature of the legal owner, it is the duty of the purchaser to investigate the title to the thing purchased, and if from a trustee, to ascertain the authority of the trustee to sell.

9. That if the sale by the trustee was valid the purchaser was entitled to a transfer, and no responsibility attaches to the corporation. If the sale was illegal, invalid, then no title passed, and the purchaser holds the property affected with the trust and is bound to account to the true owner for its value, or to restore the property.

10. That when the Court decided that the sale was illegal, the decree should have been that the purchasers from the trustee restore to the plaintiff the shares of which she had been illegally dispossessed, or account to her for the value thereof; whereas the decree decides that the sale was illegal, yet the title of the purchasers good.

11. That under no circumstances could the decree against the corporation be for more than the restoration of the stock, with the dividends accrued thereon.

*Porter & Conner,* for appellant :

No *mala fides* or collusion between bank and trustee is alleged, and the question submitted is whether, on the case made, the bank is liable for having permitted the transfer of the stock.

Corporations have been held liable :

1. Where the power of attorney or assignment was forged, for a corporation is bound to know the signature of its stockholders.

2. Where the corporation issued or transferred spurious stock, because it is estopped from denying its own seal or the acts of its transfer agent.

3. Where it transferred stock to itself as purchaser or holder of a lien or interest in the stock to the prejudice of other creditors.

4. Where the corporation has assumed to decide between conflicting claims who was the legal owner of the stock, and has erred in its decision.

Under one or the other of these heads all the cases will, it is believed, be classed. Under the last head comes a large class of cases, *e. g.,* where A. delivers to B. certificate properly endorsed, but before transfer on books of corporation C. attaches the interest of A. by process served on the corporation. If the bank then transfers, it is liable if it errs. But the question involved in that class of cases is not the transfer by corporation, but the fact of ownership. If the bank errs the transfer is not by the true owner.

The plaintiff, the *cestui que trust,* alleges the liability of the bank. If the bank is liable, it must be from breach of contract or breach of duty *ex contractu* or *ex delicto;* but—

I. There is no contract with *cestui que trust,* and, therefore, no breach. Whatever contract exists is with the trustee.

II. Is there any breach of duty ? What is the duty of the bank ? The Act (1836, 19th §,) says "the stock shall be assignable and transferable according to such regulations and upon such terms as may be prescribed and fixed by the said bank corporation, or the Directors thereof;" and the scrip says "this stock is not transferable, except at the bank, by the stockholder in person or by attorney."

Who is the stockholder ? Who holds the stock ? Clearly not the *cestui que trust.* She has the beneficial interest, it is true, but she does not hold the stock—is not the owner of the stock.

The very interposition of trustee is because she is *not* to hold the stock.

How can she be regarded as holder, or owner, or proper party to transfer, when the very object of creating the trustee is to prevent her holding, or owning, or transferring the stock?

In *Farmers' and Mechanics' Bank* vs. *Wayman & Stockett,* 5 Gill., 356, the Court held that as the stock stood on the books of the bank in the name of Wayman & Stockett, trustees for A. Jones, wife of                    the bank had notice of the trust, that Wayman & Stockett were the legal proprietors of the stock, and that the bank could not allow the title to the stock to pass by a transfer, by any other person than the trustee, without becoming responsible. The bank permitted the transfer to be made by the *cestui que trust,* and was held responsible therefor.

So clear is the inability of the *cestui que trust* to transfer or meddle with the stock, that when the trustee dies or moves away, she cannot even draw the dividends, but must wait until new trustee is appointed.

The trustee is the stockholder; he holds the stock; the legal title is in him; he votes.—Angell on Corp., § 131.

He receives the dividends.

In case of sale, he delivers certificate and makes the order, and to him the purchase money is paid.

In many cases he is the only party the bank can know. Stock is frequently registered "John Smith, Trustee," or "Trustee for A. B.," initials only being used and merely to distinguish the individual stock of John Smith from that which he holds for another, or as broker or agent.

The only safe rule the corporation can adopt is to see that the transfer is made by the legal owner, and that is all the law requires. To go beyond that is to involve the corporation in complexity and depreciate the value of the stock.

There is no peculiar sanctity about stock. It is property, bought and sold as property, and the same law which governs sales of other property governs sales of stock.

The vendor sells, the vendee purchases. The bank can neither give title, nor divest title, nor determine the question of title. The two first appertain to the parties, the third to the Court.

But it is said the bank transfers. This is a confusion of terms.

The bank does not transfer. It only records the transfer and gives certificates of the fact. The stock is not transferred *by* the bank, but *at* the bank by the stockholder. The title to the stock is

not in the bank but in the stockholder, and the transfer must necessarily be by the party in whom the title is.

The entry or record of the transfer on the books of the corporation is for the benefit of the corporation and its protection.— *Union Bank* vs. *Laird*, 2 Wheat., 390; *Black* vs. *Zacharie*, 3 How., 513; *State Bank* vs. *Cox*, 11 Rich. Eq., 348; Angell Corp., § 375; *Bank of Utica* vs. *Barron*, 2 Cowen, 770; *Commercial Bank* vs. *Kortright*, 22 Wend., 362.

The legal right to supervise the transfer was intended for their benefit.—*Brent* vs. *Bank of Washington*, 10 Peters, 616.

The transfer from vendor to vendee, and the entry on or record of the transfer on the books of the corporation, are separate and distinct transactions.

The title to stock will pass, although no transfer has been made on the books of the corporation.—Angell Corp., §§ 564, 565; *Commercial Bank* vs. *Kortright*, 22 Wend., 348, 363; *Quiner* vs. *Marblehead Insurance Company*, 10 Mass., 482; *Bank of Utica* vs. *Barrow*, 2 Cowen, 777; *New York and New Haven Railroad Company* vs. *Schuyler*, 34 N. Y., 80; *State Bank* vs. *Cox*, 11 Rich. Eq., 344, 348, 350; *Sargent* vs. *Franklin Insurance Company*, 8 Pick., 96; *Gilbert* vs. *Manchester Insurance Company*, 11 Wend., 628; *Smith* vs. *Northampton Bank*, 4 Cush., 1.

If, then, the title passes by delivery of the scrip, and the *bona fide* holder for value presents the stock, indorsed by the legal owner, what right has the bank to refuse to transfer.

It has before it the evidence that the vendor was the legal owner of the stock, that he has sold it to a *bona fide* vendee, and that his order to allow vendee to transfer is genuine. What more can it require? The title in vendee is complete, and if the bank does not permit transfer when it should, it is liable for all damages accruing. It has duties to the vendee as well as to the vendor.

It is conceded that the above is sound law, as regards individual property, but not as regards trust property; that, as to trust property, the bank must see that the trust is duly executed.

We deny the proposition. The bank looks and can look only to the legal title.—*Davis* vs. *Bank of England*, 2 Bing., 407; *Franklin* vs. *Bank of England*, 9 B. & C., 156; *Parsons* vs. *Bank of England*, 5 Vesey, 669; *Hartga* vs. *Bank of England*, 3 Vesey, 58; *Commercial Bank* vs. *Kortright*, 22 Wend., 363; *Churchett* vs. *Bank of*

*England,* 11 Mees. & Wel., 323; Morse on Banking, 166; *Bank* vs. *Lanier,* 11 Wall., 378.

Any other doctrine would resolve every corporation into a Court of Equity. It must adjudge the equities at its peril, or, declining to transfer, impede the transactions of commerce.

Nay, more, it must pass upon the validity of the contract of sale, for the only ground upon which the bank can refuse to transfer is, that vendee has not good title.

Take ordinary case. A trustee for married woman, and after her death for children of marriage, no power of sale expressed. If trustee has not implied power, then every sale must be under order of Court, for the Court alone could bind infants.

The English cases all establish the doctrine that it is not the duty of the bank to look into the trust, but only to regard the legal title.

It is contended that the doctrine rests upon statute, and not upon reason, and therefore does not apply here. This is error; there is no statute enacting such rule.

(The counsel here referred to English statutes and cases to show that the decisions in that country rested upon reason and not upon statute, and they also commented upon the decision of Taney, C. J., in *Lowry* vs. *Commercial Bank,* Tan. Cir. Ct. Dec., 335.)

The United States statute of 1790 enacts that the public stock " shall be transferable only on the books of the treasury by the proprietor or.proprietors, his, her or their attorney." In *United States* vs. *Cutts,* 1 Summer, this clause came up for construction, and Mr. Justice Story said : " No person can transfer the same as such owner, or entitle himself to receive the dividends, unless he stands as a recorded proprietor upon these books, and there is a manifest propriety and policy in the view in making the provision, *as it would avoid, on the part of the Government, all inquiries into and examination of any equitable or other titles,* or liens set up as acquired under a proprietor by any third person dealing with him," pp. 142, 143. * * * I understand the statute to provide only for legal transfers, and to look to them, and them only, leaving the parties at liberty to create whatever equitable titles and liens they may choose, and to enforce them by the general remedies between them and their representatives which the jurisprudence of the country recog- nizes for such purposes." A trustee of stock is the legal proprietor,

but the beneficial interest belongs to the *cestui que trust.* (144.) To the same point is *Townsend* vs. *McIver,* 2 S. C., 43 and 44.

We grant that the trust should be duly executed, and the *cestui que trust* protected. On whom does the duty of inquiry and protection fall ? That is the real question.

What is the familiar law as to all other classes of property ?

Why that the purchaser must look to that ? If he buys, with notice of the trust, he takes subject to the trust, he becomes trustee for the *cestui que trust.* The transfer of title has no other effect than to substitute him as trustee, and the *cestui que trust* can follow the property as long as a shred of it is traceable.—*Matthews* vs. *Heyward,* 2 S. C., 244, and cases there cited.

And the same doctrine is applicable to stock.—*Duncan* vs. *Jaudon,* 15 Wall, 165, S. C.; 8 Blatch, 430; *Simons* vs. *Bank,* 5 Rich. Eq., 272.

And it is casting the burden upon the proper party, upon him who voluntarily enters into the contract for his own benefit, who has the stimulus of interest, who exercises his own judgment, and if title is defective can go back upon his vendor.

If the vendees, the Loan and Trust Company, A. J. White and Branch, had good title to the stock, then the bank was bound to transfer and could not refuse.

If the vendees had not good title, then they could hold the property tortiously ; the right and title remained in plaintiff, and she can recover from them the property or its value. They hold the property subject to the trust. They were parties to the breach of trust, and are, with Magwood, responsible to the *cestui que trust.*

All the vendees are responsible and accessible. They have been made parties, and can be bound by the decree. The fact that plaintiff never pursued them justifies the inference that she regarded their title as good, and if their title was good, then it is a logical sequence that the bank was bound to transfer.

This is the rule as to all other property. Why should it not hold equally as to stock ?

The law requires a deed of land to be recorded at Mesne Conveyance. Suppose a trustee should sell in breach of trust, would it not be curious to hold the Register of Mesne Conveyances responsible, because he had allowed the transfer, and yet the two things are alike.

To hold that the bank, which has no interest in the transaction,

but simply records the transfer for purposes of its own, is to be the guarantor of the title to the vendee is startling.

It makes the corporation, the only party who has no interest, the guarantor and bondsman of all the parties. The bank is to guarantee the title to the vendee, and pay the purchase money to the vendor.

The duty and responsibility of the bank and of the several parties to the transaction are fully stated in *Bank of Virginia* vs. *Craig*, 6 Leigh., 400.

Stock stood on the books of the bank. Fox guardian of Lewis Craig. Fox sold and transferred the stock and embezzled proceeds. Craig, on coming of age, brought action against the bank. The Circuit decree held the bank liable. The bank appealed, and the Circuit decree was reversed.

(This case was strongly relied on by the counsel, and their brief contained extracts at length from the opinion of the Court. They also cited *Central Railroad Banking Co.* vs. *Ward*, 37 Geo., 515, 531; *Albert* vs. *Savings Bank*, 2 Md. R., 168, and other authorities.)

*Rutledge & Young*, for Elizabeth C. Magwood, submitted the following points and authorities:

I. That in case of trusts the beneficiary is the true owner; and the principle is the same, whether the property consists of stock in a bank, or railroad company, or other personalty. If it consists of stock, the *cestui que trust* is the true stockholder.—Lewin on Trusts, 585 to 595, *et seq.*

Stock in a railroad company is a personalty, and subject to same principles.—*Johns* vs. *Johns*, 1 Ohio, 350; *Ashton* vs. *Langdale*, 4 Eng. L. and Eq., 80; *Arnold* vs. *Ruggles*, 1 Rhode Is., 165; *Nightingale* vs. *Devisme*, 5 Burr, 25, 93; *Sewall* vs. *Bart Water Power Co.*, 4 Allen, 282; *Bank* vs. *Lanier*, 11 Wall, 369.

These doctrines are in no way varied by the nature of the trust in the present case.—*Staggers* vs. *Matthewes*, 13 Rich. Eq., 153; *Heath* vs. *Bishop*, 4 Rich. Eq., 50.

II. That the corporation whose stock is thus owned is *the trustee* of the stockholders, holding the corporate property *in trust*, to manage it with care for the benefit of the stockholders; to use due diligence in protecting their interests from detriment or destruction; to pay debts, and finally to distribute *pro rata*. And when the corporation is *notified* of the true ownership of any stock, and negligently

permits it to be *transferred*, by some one not legally authorized to do so, thereby divesting the owner of his rights, and destroying the evidence of his ownership, it is guilty of a *breach of trust.—Davis* vs. *Bank of England*, 2 Bing., 405; *Farmers' and Mechanics' Bank* vs. *Wayman & Stockett*, 5 Gill, 356; *Lowry* vs. *Commercial and Farmers' Bank of Baltimore*, Taney's Cir. Ct. Dec.; *Albert* vs. *Savings Bank*, 2 Md. R., 166; *Chew & Goldsborough* vs. *Bank of Baltimore*, 14 Md. R., 315; *Mechanics' Bank of Alexandria* vs. *Louisa and Amelia Seton*, 1 Pet., 309, 310; *Simons* vs. *Bank*, 5 Rich. Eq., 272; 2 Story's Eq. Juris., § 1252; *Mumma* vs. *Potomac Co.*, 8 Pet., 281; Hill on Trustees, 3d Am. Ed., side pp., 174, note 2; *Bayard* vs. *Farmers' and Mechanics' Bank*, 52 Penn. R., 233. The latter case decides all the points in this proposition.

Banks are liable on analogous principles in cases of forged powers of attorney and signatures.—Vide note to *Ex Parte Swan*, 448, Common Bench Rep. Eng. Com. L. R., 97, citing *Pollock* vs. *National Bank*, 3 Seld., 274; *Ashby* vs. *Blackwell*, Amb., 503; *Duncan* vs. *Luntly*, 2 McN. & Gow., 30; *Coles* vs. *Bank of England*, 10 Adol. & Ell., 446; *Sloman* vs. *Bank of England*, 14 Sim., 488, 490; *Swan* vs. *North British Ins. Co.*, 2 H. & G., 175; 7 C. B., 400–448; 7 Hurleston and Norman, 603, 661.

III. That the stock, being in the name of a trustee, *for a certain person specified therein*, is *notice sufficient* to show the corporation to whom the stock *really* belongs, and to excite its *inquiry* as to the *legal* authority of any other person, offering to transfer or dispose of the same, to perform such act.—*Porter et al.* vs. *Bank of Rutland et al.*, 19 Vt., 425; *Blandell* vs. *Stevens et al.*, 16 Vt., 179; Sug. on Vend., 532; 4 Johns. Ch. R., 39–44; *Anderson* vs. *Van Allen*, 12 Johns., 343; *Atkinson* vs. *Atkinson*, 8 Allen 15; *Lowry* vs. *Com. Bank*, Taney's Cir. Ct. Dec.; *Albert* vs. *Savings Bank*, 2 Md. R., 166; *Sturtevant* vs. *Jaques* 14 Allen, 523; *Bayard* vs. *Farm. and Mech. Bank*, 52 Penn., 233; *Simons* vs. *Bank*, 5 Rich. Eq., 272; *Street* vs. *Laurens*, 5 Rich. Eq., 242.

IV. That the bank and road so transferring is responsible to Elizabeth C. Magwood for the stock, and must pay to her its value.— *Farmers' and Mechanics' Bank* vs. *Wayman & Stockett*, 5 Gill, 356; *Pollock* vs. *National Bank*, 3 Seld., 274; *Atkinson* vs. *Atkinson*, 8 Allen, 15; Perry on Trusts, § 844.

V. That the stock in question stood in the name of "H. M. Magwood, in trust for Elizabeth C. Magwood," and H. M. Magwood·

had *no* authority, under the instrument creating the trust, or from its character, or from Elizabeth C. Magwood, expressly or by implication, or from her acquiescence or ratification, to make such transfers.—Story on Agency, § 127, note 2; *Ib,,* § 133; Story's Eq. Juris., §§ 384–395; Lewin on Trusts, § 523; Perry on Trusts, § 850, and cases cited; *Thompson* vs. *Furch*, 22 Beav., 325, and 8 DeG. M. & G., 560; *Prevost* vs. *Grats*, 6 Wheat., 487; *Fish* vs. *Miller*, 1 Hoff. R., 280.

VI. That the trustee, the holder of the dry legal estate in the stock, by his transfer, passed nothing more than an inchoate claim in equity to his vendee to 'have the stock transferred to him, and could not pass the *perfect* legal title without the *voluntary* act of the bank, by which act alone the *cestui que trust* could be deprived of his property.

The idea, therefore, that the bank is a mere register of transfers, and no more, is legally inaccurate.—*Union Bank of Georgetown* vs. *Paine*, 2 Wheat., 393; *Black* vs. *Zacharie*, 3 How., 513; *Northrop* vs. *Newtown and Bridge Turnpike Co.*, 3 Conn., 544; *Marl Man. Co.* vs. *Smith*, 2 Conn., 579; also 5 Conn., 246; *Shipman* vs. *Ætna Ins. Co.*, 29 Conn., 246; *Bank* vs. *Lanier*, 11 Wall, 377, 378; 3 Kent's Com., 453; *Lowry* vs. *Com. Bank*, cited above; *Bayard* vs. *Farmers' Bank*, cited above.

VII. That the *cestui que trust*, in any event, has the option to proceed against the bank, or follow the funds, if practicable to do so.—Perry on Trusts, § 843, and notes.

VIII. In case it should be decided, however, that the trustee, by his transfer, passed the *legal title* to the assignees of the stock, and that the bank had no power to refuse to transfer on the books, and merely *registered* the fact, and that the *perfect legal title* of the stock was passed to the purchasers thereof, and that the bank incurred no responsibility by reason of such transfer, the respondent, Elizabeth C. Magwood, is entitled to recover from the purchasers of the stock, because each purchaser of the stock took it *subject to the trust*, if he bought *with notice of it*, and is liable to account to the *cestui que trust* for its value.—Perry on Trusts, §§ 831–835, *et seq.; Ib.*, § 217, 189, 190, note 4; *Mangles* vs. *Dixon*, 3 House of Lords Cas., 737; Lewin on Trusts, Sp., 725; *Street* vs. *Laurens*, and *Simons* vs. *Bank*, 5 Rich. Eq.; *Hassey* vs. *McIlwain*, 2 Will. Ch., 426; *Adair* vs. *Shaw*, 1 Sch. & Lef., 262; *Mead* vs. *Lord Orrery*, 3 A. A. Kyns.,

238; Adams' Eq., 62; *Mechanics' Bank* vs. *Seton*, 1 Pet., cited *supra*; *Duncan, Sherman & Co.* vs. *Landan*, 15 Wal.

Such being the legal doctrines, the fact of notice of the trust to each purchaser depends upon the evidence in the cause.

*Buist & Buist, Simonton & Barker,* and *Hanckel,* for other respondents.

The opinion of the Court was delivered by

WILLARD, A. J.   The leading question is, whether a corporation is liable to a *cestui que trust* under a trust of corporate stock declared on its books, where it transfers such stock upon the authority of a trustee without power to alienate or the consent of the *cestui que trust.*

The plaintiff, to maintain her judgment, must show that she has a remedy, either at law or in equity, against the defendants.

In equity the corporation is bound to protect the title of a *cestui que trust*, under a trust of its stock declared upon its books, against the exercise of powers forbidden by or inconsistent with the nature and terms of such trust.

It is not necessary here to affirm, as a general proposition, that, from the very nature of the legal relation subsisting between a corporation and its stockholder, a trust arises charging the corporation with the responsibilities of a trustee towards the stockholder.

A more limited view of the equities springing from the relations of the parties will be sufficient for the purposes of the present case. The validity of a trust of corporate stock is not and cannot be questioned.   To such a trust, when declared on the books of the corporation, such corporation cannot be a stranger, from the nature of the trust itself.   The declaration upon its books carries at the same time the force of notice of the trust and of an acceptance of a certain undefined responsibility connected with it.   To define that responsibility recourse must be had to the nature of the legal duties incident to its relation to its stockholders.   The legal duty of the corporation to assure the title of its stockholder is moulded to conform to the state of relations between the trustee of stock and the *cestui que trust.*   The corporation is not simply the custodian of the technical title of the stockholder, but of the subsistence of what the stock represents for the purpose of beneficial enjoyment by the stockholder.   As the duty of the corporation is commen-

surate with the right of the stockholder to the full beneficial enjoy-
ment of that which is represented by the stock, it would follow that,
where the legal title and the beneficial right to the stock are in
different persons, the duty of the corporation would extend to the
protection of both. The legal duty of the corporation having thus
become moulded to conform to the state of relations between the
parties to a trust of stock, it is manifest that the corporation is to
be regarded as so far a privy to the trust that any act on its part,
tending to defeat the object of trust, will subject it to proceedings
undertaken for the administration of the trust.

The line of reasoning adopted in *Bayard* vs. *Bank*, (52 Penn.,
232,) goes beyond that already presented, developing the characteris-
tics of a trust in the general relation of the corporation to its stock-
holder. If the reasoning in that case is fully supported, it would
necessarily substantiate the view already presented, and, on the
other hand, if the discussion in that case should be regarded as
taking a range wider than that essential to the decision of the case,
the conclusion of the Court would still give authoritative support
to the views here advanced.

It is not essential to the views here presented to consider the
liabilities of the corporation as of the same nature and extent as
those of the trustee. While the trustee is bound to activity in en-
forcing the powers lodged in him for attaining the object of the
trust, the duty of the corporation must be regarded as circumscribed
by the nature of its general legal duties springing from its relation
to its stockholders: Thus limited, the evil of exacting from the
corporation an undue attention to the particulars of the administra-
tion of the trust, as commented upon in *Hortgo* vs. *Bank*, (3 Ves.,
55,) could not arise. Inasmuch as the trust in the present case was
declared on the books and face of the scrip to the extent of naming
the *cestui que trust*, it follows that if the action of the trustee in dis-
posing of the stock was without authority, and tended to defeat the
object of the trust, the corporation is liable in equity to the extent
of any damage sustained by reason of its co-operation with the
trustee to that end.

It is not contended that the trustee had any express power to
alienate the stock. Can a power to that end be implied? If so, it
must be upon the ground that such a power was within the inten-
tion of the trust, as a means of obtaining its object. The object of
the trust in the present case was limited to a provision against a

contingency that had not arisen at the time the trustee assumed to alienate the stock. The trust was for the benefit of an unmarried female. Its object was that in the event of her marriage the property in question should not be subject to the marital rights of her husband. She remained unmarried to the time of the alienation of the stock. Whatever might be the powers of the trustee in the event of the contingency on which the whole life and force of the trust depended, it is clear that while the *cestui que trust* remained unmarried, *sui juris*, the trustee had no duty to perform to which power to alienate was essential, and, therefore, there is no ground to imply a power to sell and transfer the stock. Unless the defendants assumed the existence of consent on the part of the *cestui que trust* to the disposition of the stock they could regard the transaction in no other light than as an assumption by the trustee of a right of control that he did not possess, nor had they the right to assume the consent of the *cestui que trust* without clear evidence of the fact of such consent.

It must, therefore, be concluded that the defendants are liable for the transfer of the stock, it appearing that such transfer occasioned the loss of the trust estate.

The conclusion of the Circuit Judge, that the purchasers of stock were not necessary parties, would seem to follow from the view already taken.

If the only ground in equity for the plaintiff's action against the defendants was their complicity in a breach of trust, as strangers to the trust, it might well be that the purchasers should be made parties with the defendants, as they, with the trustee and the corporation, without whose assistance the breach of trust could not be made effectual, would have to be regarded as privies, as it regards such breach of trust. Here, however, the plaintiff stands upon equities of a different nature, to which the purchasers are strangers, and she is not bound to make them parties.

The Circuit decree should be affirmed.

*Moses*, C. J., and *Wright*, A. J., concurred.